Mr. Justice Morris
delivered the opinion of the Court:
This is an appeal' from a decision of the Commissioner of Patents, wherein, affirming the decisions of the lower tribunals of his office, he has refused a patent for an alleged process in the manufacture of a device used in the construction of electrical measuring instruments. The claims sought to be patented are nine in number, and they are described in the following terms :
“ 1. The described method of manufacturing a symmetrical movable coil for an electrical measuring instrument, consisting in first forming a supporting frame or spool by subjecting a short tube of metal to pressure until the desired conformation and shape is obtained, then winding the coil thereon and finally securing the pivot-pins thereto in the axial line of the coil.
“2. The described method of manufacturing a movable coil for an electrical measuring instrument, consisting in first forming a supporting frame or spool of a single piece of metal by subjecting the same to pressure until the desired conformation and shape is obtained, winding the coil thereon and then securing the pivot-pins thereto in the axial line of the coil and simultaneously adjusting the needle-supporting pivot in such manner that the point of the needle is located in the central plane of the coil, or in a plane at a definite angle thereto.
“3. The described method of manufacturing a supporting framé or spool without joint or seam for an electrical coil, consisting in giving to a short section of tubing the desired configuration, then subjecting it to pressure until the desired curvature is obtained, and finally turning down the lateral edges thereof in such manner as to constitute the flanges of the frame or spool.
“ 4. The described method of manufacturing a supporting frame or spool without joint or seam for an electrical *433 coil, consisting in giving a short section of tubing the desired configuration, then giving to the lateral faces thereof the desired curvature to adapt it to the curvilinear field in which it is designed to be used, and finally turning down the lateral edges thereof so as to constitute the flanges of the frame or spool.
“ 5. The described method of securing the pivot pins to the movable coil for an electrical measuring instrument in the mathematical axial line thereof, consisting in securing or locking the coil in. a definite or fixed position and then detachably securing the pivot pins to movable supports which have a fixed relation to the mathematical axis of the supported coil; coating the pivot-supporting plates with cement, moving the same into mechanical connection with the coil and its supporting frame or spool and allowing the parts as thus secured to so remain until the cement sets or hardens.
“6. The described method of securing the needle-supporting pivot to the movable coil of an electrical measuring instrument and in such manner that the point of the needle shall lie in the central plane of the coil, consisting in securing or locking the coil in a definite or fixed position and then detachably securing the needle-supporting pivot in a movable support which has a fixed relation to the mathematical axis of the supported coil; coating the pivot-supporting plate with a cement, rotating said pin until the rectangular faces thereof are in planes parallel with the central plane of the coil and allowing it thus to remain until the cement sets or hardens.
“7. The described method of securing the pivot pins to the movable coil for an electrical measuring instrument in the mathematical axial line thereof, consisting in securing or locking the coil in a definite or fixed position and then detachably securing the pivot pins to movable supports which have a fixed or definite relation to the mathematical axis of the supported coil and finally moving the supported *434 pivot pins into mechanical contact with the coil and permanently securing them thereto.
“8. The described method of securing the needle-supporting pivot to the movable coil of an electrical measuring instrument and in such manner that the point of the needle shall lie in the central plane of the coil, consisting in securing or locking the coil in a definite or fixed position and then detachably securing the needle-supporting pivot pin in a movable support which has a definite or fixed relation to the mathematical axis of the supporting coil; rotating said pin until the rectangular faces thereof are in planes parallel with the central plane of the coil, then moving the same forward and connecting it to the coil.
“9. The described method of securing the needle-supporting pivot to the movable coil of an electrical measuring instrument in such manner that the point of the needle shall have a definite or fixed relation to the axis of the coil, consisting in securing or locking the coil in a definite or fixed position and then detachably securing the needle-supporting pivot to a movable support which has a definite or fixed relation to the mathematical axis of the supported coil, then rotating the pivot to a definite point and finally securing it permanently to the coil.”
Five of these claims, being those numbered 5, 6, 7, 8 and 9, were allowed by the primary examiner, apparently with some reservation of further inquiry into them. His decision in this regard is in these words: “The remaining claims are allowed, as at present advised;” or, as he expresses it in another place, “ the remaining claims may, as advised, be allowed.”
But the claims numbered 1, 2, 3 and 4 he rejected, on the ground that they were not patentable. From his decision in rejecting these four claims an appeal was taken to the board of examiners; and the board of examiners affirmed the action of the primary examiner. Upon a further appeal *435 from the hoard of examiners to the Commissioner of Pat-' ents; the Commissioner affirmed the decision of the board, although he seems to have had some difficulty in reconciling the action of the primary examiner in the refusal of some of the claims with his allowance of the others. From the decision of the Commissioner the case comes to us by appeal.
The application, it will be noticed, in each and all of the four claims brought here for our consideration is for a method or process, and not either for the thing produced or for the mechanism by which it is produced. Both the mechanism and the product, it is understood, which are connected with the process for which a patent is now sought, have already been patented to the present appellant. The question, therefore, for determination is the greatly-vexed one, how far a method or a process is patentable, and when it is a subject of patentability.
The general question was decided in the affirmative by the Supreme Court of the United States in the case of Cochrane v. Deener, 94 U. S. 780, 787, in which that court by Mr. Justice Bradley said:
“That a process may be patentable, irrespective of the particular form of the instrumentalities used, can not be disputed. If one of the steps of a process be that a certain substance is to be reduced to a powder, it may not be at all material what instrument or machinery is used to effect that object, whether a hammer, a pestle and mortar, or a mill. Either may be pointed out; but if the patent is not confined to that particular tool or machine, the use of the others would be an infringement, the general process being the same. A process is a mode of treatment of certain materials to produce a given result. It is an act, or series of acts, performed upon the subject-matter to be transformed and reduced to a different state or thing. If new and useful, it is just as patentable as is a piece of machinery. In *436 the language of the patent law, it is an art. The machinery pointed out as suitable to perform the process may or may not be new or patentable; while the process itself may be altogether new, and produce an entirely new result. The process requires that certain things should be done with certain substances, and in a certain order; but the tools to be used in doing this may be of secondary consequence.”
The process in that case was for the manufacture of flour, and the patent, which had been issued for it, was sustained.
In the previous case of Corning v. Burden, 15 How. 252, in an opinion written for the Supreme Court by Mr. Justice Greer, the distinction was indicated between a process which was patentable and the mere function of a machine which was not patentable. There the court said :
“A process eo nomine is not made the subject of a patent in our act of Congress. It is included under the general term “useful art.” An art may require one.or more processes or machines in order to produce a certain result or manufacture. The term machine includes every mechanical device or combination of mechanical powers and devices to perform some function and produce a certain effect or result. But where the effect or result is produced by a chemical action, by the operation or application of some element or power -of nature, or of one substance to another, such modes, methods, or operations are called processes. A new process is usually the result of discovery; a machine, of invention. The arts of tanning, dyeing, making.waterproof cloth, vulcanizing india-rubber, smelting ores, and numerous others, are usually carried on by processes, as distinguished from machines. One may discover a new and useful improvement in the process of tanning, dyeing, etc., irrespective of any particular form of machinery or mechanical device. And another may invent a laborsaving machine by which this operation or process may be performed, and each may be entitled to his patent. . . . It is when the term process is used to represent the means *437 or method of producing a result that it is patentable, and it will include all methods or means which are not effected by mechanism or mechanical combinations. But the term process is often used in a more vague sense, in which.it can be the subject of a patent. Thus we say that a board is undergoing the process of being planed, grain of being ground, iron of being hammered or rolled. Here the term is used subjectively or passively as applied to the material operated on, and not to the method or mode of producing that operation, which is by mechanical means and the use of a machine, as distinguished from a process. In this use of the term it represents the function of a machine, or the effect produced by it on the material subjected to the action of the machine. But it is well settled that a man can not have a patent for the function or abstract effect of a machine, but only for the machine itself which produces it.”
In that case the patent under consideration was for “a new and useful machine for rolling puddler’s balls and other masses of iron, in the manufacture of iron,” and it was held to be a patent for a machine, and not for a process, although it was stated that the language of the claim was equivocal.
Subsequently the whole subject came up for consideration anew in the Supreme Court in the case of Risdon Iron and Locomotive Works v. Medart, 158 U. S. 68, in which the patent under consideration was for an alleged process in the manufacture of belt-pulleys, and the court by Mr. Justice Brown said:
“ That certain processes of manufacture are patentable is as clear as that certain others are not; but nowhere is the distinction between them accurately defined. There is somewhat of the same obscurity in the line of demarcation as in that between mechanical skill and invention, or in that between a new article of manufacture, which is universally held to be patentable, and the function of a machine, *438 which it is equally clear is not. It may be said in general that processes of manufacture which involve chemical or other similar elemental action are patentable, though mechanism may be necessary to the application or carrying out of such a process, while those which consist solely in the operation of a machine are not. Most processes which have been held to be patentable require the aid of mechanism in their practical illustration; but where such mechanism is subsidiary to the chemical action, the fact that the patentee may be entitled to a patent upon his -mechanism does not impair his right to a patent for the process, since he would lose the benefit of his real discovery, which might be applied in a dozen different ways, if he were not entitled to such patent. But if the operation of his device be purely mechanical, no such considerations apply; since the function of the machine is entirely independent of any chemical or other similar action.”
The court thereupon - cited and discussed the cases of Neilson v. Harford, 1 Web. Pat. Cas. 331; Househill Coal and Iron Company v. Neilson, 1 Web. Pat. Cas. 673 ; O'Reilly v. Morse, 15 How. 62; Corning v. Burden, 15 How. 252; Mowry v. Whitney, 14 Wall. 620; Tilghman v. Proctor, 102 U. S. 707; New Process Fermentation Co. v. Maus, 122 U. S. 413; Bell Telephone Co. Case, 126 U. S. 1, and Wyeth v. Slone, 1 Story, 273, quoting at large from the opinion of Mr. Justice Greer in the case of Corning v. Burden as stating the true distinction to be observed in such cases. Then it proceeded to say:
“Although the cases are not numerous, this distinction between a process and a function has never been departed from by this court, and has been accepted and applied in a large number of cases in the circuit courts. The following processes have been held not to be patentable: An improvement in sewing machines, by which the soles and uppers of boots and shoes could be sewed together without any welt by a certain kind of stitches, (McKay v. Jackman, 12 Fed. *439 Rep. 615); a process of washing shavings in breweries (Brainard v. Cramme, 12 Fed. Rep. 621); an improved method of treating seed by steam, (Gage v. Kellogg, 23 Fed. Rep. 891); a process for crimping heel-stiffenings of boots and shoes, (Hatch v. Moffitt, 15 Fed. Rep. 252). See, also, Sickles v. Falls Company, 4 Blatch. 508, and Excelsior Needle Co. v. Union Needle Co., 32 Fed. Rep. 221.”
The alleged process, for which the patent had been issued which was under consideration in the case of Risdon Iron and Locomotive Works v. Medart, purported to be “ an improved process for the manufacture of belt-pulleys formed of a wrought-metal rim and a separate center, usually a spider, and usually made of cast metal.” And, as it is argued that it was entirely analogous to that which is involved in the case before us, it may be stated to have consisted of six several steps: first, centering the pulley center or spider; second, grinding the ends of the arms concentrically with the axis of the pulley; third, boring the center; fourth, securing the rim to the spider; fifth, grinding the face of the rim concentric with the axis of the pulley; sixth, grinding or squaring the edges of the rim. “ This process,” the court said,-“is a purely mechanical one;” and accordingly it held the patent to be void.
The decision in the case of Risdon Iron and Locomotive Works v. Medart seems to have been understood by some courts and to some extent by the Patent Office as restricting the patentability of processes to those which involved chemical or other elemental action. But that this was an erroneous impression sufficiently appears from the subsequent case of Westinghouse v. Boyden Power Brake Company, 170 U. S. 537, which was a case of alleged infringement, and in which the patent under consideration was for a fluid-pressure automatic-brake mechanism, the object of which was stated in the specification to be “to enable tbe application of brake-shoes to car-wheels by fluid-pressure to be effected with greater rapidity and effectiveness than heretofore, *440 more particularly in trains of considerable length, as well as to economize compressed air in the operation of braking, by utilizing in the brake-cylinders the greater portion of the volume of air which in former practice was directly discharged into the atmosphere.”
The controversy in the case to 'some extent turned upon the question whether one of the claims of the patent was to be regarded as being one for a process, or merely for novelty of mechanism. The court held that the whole theory of the specification and claims was based upon the alleged novelty of the mechanism; but at the same time it proceeded also to discuss the question of the patentability of process, and in so doing reviewed a number of the preceding cases, including that of Corning v. Burden, and Risdon Iron and Locomotive Works v. Medart. The court in its opinion said as follows: “The complainant’s case must rest either upon the theory that the admission of compressed air directly from the train-pipe to the brake-cylinder is patentable as a function, or that the means employed by the defendants for that purpose are a mechanical equivalent for the auxiliary valve ” described in the patent.
And then it proceeded to state that the first theory was based on the second claim of the patent, and it said : “ The difficulty we have found with this claim is this, that, if it be interpreted simply as a claim for the function of admitting air to the brake-cylinder directly from the train-pipe, it is open to the objection, held in several cases to be fatal, that the mere function of a machine can not be patented.”
Then, after citing and discussing the cases of Corning v. Burden, 15 How. 252; Burr v. Duryee, 1 Wall. 531; Fuller v. Yentzer, 94 U. S. 288; and Risdon Iron and Locomotive Works v. Medart, 158 U. S. 68, the opinion, which, it may be remarked, was written by the same Justice who wrote the opinion in the case of Risdon Iron and Locomotive Works v. Medart, continued as follows:
*441 “These cases assume, although they do not expressly decide, that a process to be patentable must involve a chemical or other similar elemental action; and it may still be regarded as an open question whether the patentability of processes extends beyond this class of inventions. Where the process is simply the function or-the operative effect of a machine, the above cases are conclusive against its patentability; but where it is one which, though ordinarily and most successfully performed by machinery, may also be performed by simple manipulation, such, for instance, as the folding of paper m a peculiar way for the manufacture of paper bags, or a new method of weaving a hammock, there are cases to the effect that such a process is patentable, though none of the powers of nature be invoked to aid in producing the result. Eastern Paper Bag Co. v. Standard Paper Bag Co., 30 Fed. Rep. 63; Union Paper Bag Machine Co. v. Waterbury, 39 Fed. Rep. 389; Travers v. American Cordage Co., 64 Fed. Rep. 771. This case, however, does not call for an expression of our opinion on this point, nor even upon the question whether the function of admitting air directly from the train-pipe to the brake-cylinder be patentable or not, since there is no claim made for an independent process in this patent, and the whole theory of the specification and claims is based upon the novelty of the mechanism.”
In view of the disclaimer in the last sentence of any intention to express an opinion on the subject of the patentability of processes, it is intimated in the argument of the case before us that the previous intimation on the subject is obiter dictum, and has not therefore the effect of modifying the opinion in the case of Risdon Iron and Locomotive Works v. Medart. But we deem it unnecessary to go into that consideration; for we find no real antagonism between the two cases. In the one illustrations have been cited of processes decided not to be patentable; in the *442 other there is mention of processes that have been held patentable; and the general subject of patentability of processes, other than those involving chemical or other elemental action, is left an open question.
It may be noticed that in the case of Westinghouse v. Bowden Power Brake Co., four of the justices dissented; and in the dissenting opinion written by Mr. Justice Shiras it was said :
“I can not assent to what is, perhaps, rather intimated than decided in the opinion of the court that what is called a process in order to be patentable must involve a chemical or other similar elemental action. The term “process” or “ method,” as describing the subject of a patent, is not found in the statutes. No reason is given in the authorities, and I can think of none in the nature of things, why a new process or method may not be patentable, even though a mechanical device or a mechanical combination may be necessary to render the new process practicable.”
It seems to us from all these authorities the deductions to be drawn are these: First, that processes involving a chemical or other elemental action, if new and useful, are patentable; second, that a process, which amounts to no more than the mere function of a machine, is not patentable; third, that a process or method of a mechanical nature, not absolutely dependent upon a machine, although perhaps best illustrated by mechanism, may, if new and useful, be the proper subject of a patent, even though it involves no chemical or other elemental action.
In this last class of cases, possibly a very large class, and thus far certainly a very indefinite class, the criterion of patentability, so far as it seems possible yet to state any definite criterion, would seem to be that the process may be performed by hand or by other mechanism than that exhibited, although perhaps not with equal efficiency-That we must at all events recognize the existence of such a class would seem to be beyond doubt. To this effect are *443 the cases of Melvin v. Potter, 91 Fed. Rep. 151; Travers v. American Cordage Co., 64 Fed. Rep. 771; Union Paper Bag Machine Co. v. Waterbury, 39 Fed. Rep. 389; Eastern Paper Bag Co. v. Standard Paper Bag Co., 30 Fed. Rep. 63 ; Covert v. Travers Brothers' Co., 75 O. G. 349; American Fibre Chamois Co. v. Buckskin Fibre Co., 75 O. G. 833; and Jackson v. Birmingham Brass Co., 75 O. G. 677, and the Commissioner of Patents has very properly recognized such a classification in Ex parte Rogers and Winslow, 87 O. G. 699, where he has made the same deductions from the authorities which we have here made.
Now, if the appellant’s claims here in controversy are patentable, they must fall into this last class ; and we understand it to be his contention that they do so fall. Otherwise, they must be relegated to the second class, in which patentability is inadmissible. What then is the appellant’s method or process? And wherein does its novelty as a method consist independently of the mechanism which is used to illustrate it? The novelty and the utility of the mechanism as such seem to be conceded; and the only question is whether there is anything more involved in the claims than the mere function of such mechanism.
The appellant’s claims numbered 3 and 4 need scarcely enter into our consideration at all; for plainly they involve merely well-known mechanical operations. They consist merely in drawing a section of sheet metal over a mandrel and subjecting it to pressure until a desired configuration is acquired, and then turning down the lateral edges. This is a simple and well known mechanical operation, and we fail to find in it any element of patentable novelty. Whether a spool to be used in an electrical apparatus was ever so constructed before the appellant constructed one, is of no consequence; for the claim here is for a process, and the process is well known, and therefore not patentable. That the appellant’s apparatus effects the purpose more thoroughly and more effectively than it was accomplished *444 before, is only evidence that he has a better apparatus for the purpose. The result is 'merely the function of the mechanism.
The claims numbered 1 and 2 embrace the elements of claims numbered 3 and 4, and others also in addition thereto, the first of which is that of winding the coil around the spool, after the spool has been fashioned in the manner stated in claims numbered 3 and 4. But the winding of a coil around a spool so fashioned is not new. As in the matter of the configuration of the spool itself, the appellant’s mechanism may effect this result more thoroughly and more efficiently than before; but the method itself as a process is not new. It is only the function of the machine that gives it the character of an improvement.
So, neither the fashioning of a spool of sheet metal in the mode stated in the appellant’s claims, nor the winding of a coil around such spool after it has been fashioned, nor both together, can be held to constitute a novel and patentable process. The patentability of the appellant’s claims, therefore, must be found, if at all, in the other elements, of which there is in the first claim only one, that of securing the pivot-pins in the axial line of the coil; and in the second claim, in addition to this last, the further element of “simultaneously adjusting the needle-supporting pivot in such manlier that the point of the needle is located in the central plane of the coil, or in a plane at a definite angle thereto.” And we think that these elements-in combination constitute a patentable process.
The purpose is to make a symmetrical movable coil for an electrical measuring instrument. This is effected by taking a spool of sheet metal with a certain configuration, winding the coil thereon, and securing the pivot-pins thereto in the axial line of the coil, at the same time adjusting the needle-supporting pivot in a certain specified manner. Why should not this adjustment of pivots and pivot-pins to accomplish an important result, which could *445 not be accomplished without such adjustment, be regarded as a process ? The question is not whether the mechanism exhibited by the applicant is competent to effect the result, but what the result is that is to be effected, and whether such result is the function exclusively of the mechanism.
As has been well argued by counsel for the appellant, there are three things involved in many, perhaps in most of what are known as pioneer inventions — the thing produced, the mechanism by which it is produced, and the process of production; and the last is very often the most important part of the invention or discovery, for the reason that the first mechanism used is very often crude, the thing produced equally so, and the process only is that which effects the great change in the art of science to which it appertains. In such cases, as Mr. Justice Brown said in the. case already cited of Risdon Iron and Locomotive Works v. Medart, the inventor or discoverer might lose the benefit of his real invention or discovery, if he were not entitled to a patent for the process invented or discovered. And so, there is, of course, no question that, in a proper case, an inventor may have a patent for his process, irrespective of the mechanism used and of the result of the process. The process, however, is an intangible thing, while the mechanism and the thing produced are tangible. But after all, it is the idea, the intangible thing, that is of permanent importance and most valuable.
Now, the thing to be produced in the present case is a coil for an electrical measuring instrument. The appellant has discovered that by taking a spool of sheet metal, with the coil properly wound around it, and adjusting it in a certain manner on pivot-pins and adjusting the needle in a certain manner through the instrumentality of the pivot which supports it, he can accomplish the desired purpose. Now this we understand to be a process or method for effecting a result; it is a process or method for the adjustment of coils for electrical measuring instruments in such *446 manner as that they will accurately measure the electrical current passing through them. And this process or method, while it may require the use of delicate mechanism for its actual development and manifestation and to effect the desired adjustment, seems to us to be, as a mental operation, entirely independent of such mechanism. It may be that the mechanism employed is incapable of any other function. It may even be that the process could not well be performed for any useful purpose by any other mechanism. But it does not necessarily follow from this that the process should be regarded as the mere function of the mechanism exhibited for its practical manifestation. The process is first in the logical order of things; the mechanism is only a sequence. The applicant’s discovery, for which he here seeks a patent, is that, if he caused a metal spool with a coil of wire wound around it to be adjusted in a certain manner on pivot-pins, he could have a new and useful mode for the construction of electrical measuring apparatus. It does not appear to us that the mechanism which he uses for the purpose of such adjustment is a necessary past of his process. He might possibly effect the purpose by mere manipulation. It is not impossible that he might effect it by mechanism of a radically different character from that which he exhibits. Ordinarily a process can be carried into practical effect by mechanism only; and it is the function of such mechanism to effect the process. But the process and the function of the mechanism are not for that reason one and the same thing in law or in our conception of the discovery.
We can not see that this case differs in principle from that of the Eastern Paper Bag Co. v. Standard Paper Bag Co., 30 Fed. Rep. 63, where it was discovered that, if a piece of paper was folded in a certain manner, an ingenious, new and useful paper bag would be the result. Of course, mechanism was immediately devised whereby to manufacture the bag in great quantity for commercial purposes; and it was the function of such mechanism to effect the process. And yet *447 it was held that the process, as distinguished from the function of the machine, was patentable, and the patent which had been granted therefore was upheld.
Numerous other cases have been cited to us wherein the Patent Office has issued patents for processes of a merely mechanical character, as distinguished from processes of elemental or other similar action; and it seems to us that, in the absence of any distinct and positive utterance from the Supreme Court of the United States limiting patent-ability to processes of the latter character, it is not improper that the practice should be continued. The criterion of patentability in such cases would seem to be, not that the process or method in question is independent of the special mechanism by which it is given practical effect, but that it is clearly conceivable as a mental operation independently of any such mechanism. As in the Paper Bag Case, the peculiar adjustment of the piece of paper so as to form the bag was the matter of discovery, so here we understand the adjustment of the metal spool with its coil of wire on its pivots at a definite angle, to be the subject-matter of discovery. We think the one is a process as much as the other.
Nor is this case in our opinion one of mere mechanical contrivance, which would naturally have occurred to any mechanic skilled in the art. It is always a potent, although, of course, not always a complete answer to this argument, that no one has accomplished the specified result before the actual claimant. But, apart from this, we fail to see here, in the state of the electrical art how any mechanic, by mere mechanical skill, as distinguished from the inventive faculty, could have reached the result effected by the applicant. The several steps of the process are of a mechanical character; but this is a very different thing from the merely mechanical improvement of an existing device.
In pursuance, no doubt, of the reasoning which has led us to this conclusion, was the action of the primary examiner of the Patent Office in allowing in this case the appellant’s *448 claims numbered 7 and 8, which also are purely claims for processes. In the view which we take of the matter, we find no difference in principle between claims numbered 1 and 2 and claims numbered 7 and 8; and it would seem that the Commissioner of Patents was of the same opinion, with this difference, however, that he, in his construction of the law, would seem to have regarded them all as unpatentable, while we think that they are patentable.
There, may be question, however, in the view which we take of the unpatentability of the spool alone, as s et up in claim numbered 3, and of the unpatentability of the spool with the coil wound around it, as set up in claim numbered 4, whether the claims numbered 1 and 2 before us differ substantially from claim numbered 7. But claims numbered 1 and 2 áre before us for adjudication, and claim numbered 7 is not, while it is properly included in the record.
In view of what we have said, we must hold that the applicant’s claims numbered 1 and 2 are patentable, and that those numbered 3 and 4 are not patentable. Therefore, the decision of the Commissioner as to the claims numbered S and f is affirmed ; and his decision as to those numbered 1 and 2 is reversed.

The clerk of the court will certify this opinion aud the proceedings in the cause in this court to the Commissioner of Patents according to law.

Mr. Justice Shepard dissented as to the reversal.