GAGE *v.* KELLOGG and another.

*(Circuit Court, N. D. New York. May 29, 1885.)*

1. PATENTS FOR INVENTIONS—CLAIM FOR MACHINE AND PROCESS FOR USING IT.
  There cannot be in the same patent a claim for a machine and a claim for the process of using that machine.
2. SAME—REISSUE VOID—ENLARGEMENT OF CLAIMS.
  Reissued letters patent No. 8,615, dated March 1, 1879, and granted to William B. Fisher for an improvement in seed-steaming apparatus, expand the claims in the original patent, and are void.
3. SAME—INFRINGEMENT.
  Reissue No. 8,615 compared with defendants' machine which is used to moisten meal, and not to dry or clean the seed for storage or shipping, and *held* not infringed.

*John Dane, Jr.,* for complainant.
*John W. Munday,* for defendants.

COXE, J. The complainant, as assignee, seeks by bill in equity to restrain the infringement of reissued letters patent No. 8,615, dated March 11, 1879, and granted to William B. Fisher for an "Improvement in methods and apparatus for treating seeds." The application for the reissue was filed February 19, 1878. The original patent, No. 129,018, is dated July 16, 1872, and is for an "Improvement in seed-steaming apparatus." The defendants contend, among other defenses, that the reissue is void, its claims having been expanded after a delay of five years and seven months. The claims

are placed below side by side. The italics in each show the matter not found in the other.

*Original.*

1. The combination *of the hopper, H,* perforated *conical* steam-*coil, B, jacket, O, shaft, D, and rotating arms, C C, carrying scrapers, E E, constituting an improved apparatus for treating oily seeds,* as and for the purpose *herein* set forth.

2. The *improved* method of *cleaning and drying oleaginous* seed *by feeding the same over the inclined surface of a* perforated *conical* steam-*coil,* substantially *in the manner described.*

*Reissue.*

1. The *herein described* method of *treating* seed, *consisting in allowing it to flow downward around a central* perforated steam *reservoir, and forcing jets of* steam *from said reservoir outward through the mass of seed, the flow of said seed being regulated by stirrers,* substantially *as set forth.*

2. The combination, *with a seed receptacle provided with a* perforated steam*ing device, arranged within or below the material operated upon, of devices for stirring its contents at will, said devices operating upon a platform, substantially* as and for the purposes set forth.

3. *In combination with a seed receptacle for holding the seed while being steamed, means for directing the steam into said seed, and horizontally rotating stirrers adapted to regulate the flow of said seed, substantially as set forth.*

4. *An apparatus for treating oleaginous seed by steam, consisting of a receptacle adapted to receive and retain the seed at will, a steaming device adapted to be surrounded by said seed and eject steam in different directions outwardly from within the mass, and rotating stirrers, substantially as described, whereby said seed may be thoroughly permeated by said steam, substantially as and for the purposes set forth.*

The first claim of the original, which is for the apparatus, contains the following elements: *First,* the "hopper;" *second,* the "perforated conical steam-coil;" *third,* the "jacket;" *fourth,* the "shaft;" *fifth,* the "rotating arms;" *sixth,* the "scrapers;" and, *seventh,* (construing the patent liberally,) the "bed," "base," or "table." For this claim the reissue substitutes three indefinite and nebulous claims,—the second, third, and fourth,—each enlarging and expanding the scope of the original. In the second claim the "hopper," "perforated conical steam-coil," "jacket," "rotating arms," "scrapers," and "table" are all discarded, and in their places appear "a perforated steaming device," "a seed receptacle," and "devices for stirring its contents at will, said devices operating upon a platform." It will be observed that as these devices stir the contents of the seed receptacle they must necessarily

be so located that they can perform this function. In the drawing they are placed outside of and below the hopper. In the original they are not described as doing the work of stirrers.

The third claim is even more sweeping in its terms. It deals with a combination having three elements: A "seed receptacle for holding the seed while being steamed," "*means* for directing the steam into said seed," and "horizontally rotating stirrers adapted to regulate the flow of said seed."

The fourth claim is hardly less ambiguous. It is for a "receptacle adapted to receive and retain the seed at will;" "a steaming device, adapted to be surrounded by said seed, and eject steam in different directions, outwardly, from within the mass;" and "rotating stirrers."

In the so-called "process claim" the method of "cleaning and drying oleaginous seed" becomes in the reissue a method of "treating seed." A manufacturer, therefore, who, like the defendants, is engaged in moistening linseed meal for the press is as much within this claim as one engaged in drying or cleaning.

The only attempt, either in the testimony or the brief, to defend the patent from the attack based upon the expansion of the claims, has reference to this first claim of the reissue. The attention of the complainant's expert witness was called to it, and he expressed the opinion that it is not broader, but narrower, than the original, for the reason that it is limited by the use of the words, "the flow of said seed being regulated by stirrers." His silence with reference to the other claims is suggestive. Even if this theory of the witness were correct, it would still be for a different invention. But is it correct? The patentee himself evidently understands that this claim is only for the process of treating seed by the apparatus, and the whole thereof, described in the patent. He says:

"I do not wish to be understood as claiming, broadly, the art of treating seed by steam; neither do I wish to be understood as claiming, broadly, all mechanism with which steam may be used for treating oleaginous seed, irrespective of the construction, arrangement, and operation of the same, as I am aware that steam has been employed heretofore for the purpose of treating seed."

In the original and in the reissue he seeks to secure the method of using the apparatus described in each respectively. The difficulty is that in the original the description is narrow and specific, in the reissue it is broad and general.

It is quite evident that no one would infringe the original who did not use a perforated conical steam-coil, or its equivalent, which, in the description, the drawing, and the claims, is made an element, and an essential element, of the invention. It is equally clear that when the inventor, in the reissue, speaks, for instance, of "means for directing steam into said seed," he uses language broader and more generic in its scope and meaning than is used in the original. A mechanism might infringe the claims of the reissue, and be entirely

outside of the claims of the original. For a "perforated steaming device," "a central perforated steam reservoir," etc., many equivalents suggest themselves, which would not occupy such a relation to a "steam-coil." In short, for the apt terms and perspicuous statement contained both in the description and the claims of the original patent, obscure and general language has been substituted. In no case has a word of a more limited meaning been employed, but in almost every instance the reverse is true. In studying the reissue the conviction is forced upon the mind that the inventor had before him his own and other machines, when drawing its specification, and that he endeavored to cover them all by an ingenious and clever use of words. Had the decision in *Miller* v. *Brass Co.* 104 U. S. 350, been announced at that time it is safe to assume that so venturesome an undertaking would not have been attempted. The language of *Coon* v. *Wilson,* 30 O. G. 889, S. C. 5 Sup. Ct. Rep. 537, is applicable. The court say:

"In the present case, there was no mistake in the wording of the claim of the original patent. The description warranted no other claim. It did not warrant any claim covering bands not short or sectional. The description had to be changed in the reissue, to warrant the new claims in the reissue. The description in the reissue is not a more clear and satisfactory statement of what is described in the original patent, but is a description of a different thing, so ingeniously worded as to cover collars with continuous long bands, and which have no short or sectional bands."

The conclusion is therefore reached that the reissue is void under the doctrine so often announced by the supreme court, and which has been reaffirmed as lately as May 4, 1885, in *Wollensak* v. *Reiher,* 5 Sup. Ct. Rep. 1132.

But irrespective of these considerations the inquiry is suggested, with reference to the first claim of the reissue, can there be in the same patent a claim for a machine and a claim for the process of using that machine? I have reached the conclusion that there cannot be, with some hesitation, for the reason that the question has not been argued by counsel, and yet I am unable to understand how the complainant can avoid the rule enunciated in the following cases: *MacKay* v. *Jackman,* 12 FED. REP. 615; *Brainard* v. *Cramme,* Id. 621; *Goss* v. *Cameron,* 14 FED. REP. 576; *Hatch* v. *Moffitt,* 15 FED. REP. 252; *New* v. *Warren,* 22 O. G. 587; *Corning* v. *Burden,* 15 How. 252.

But, in any view, the defendants do not infringe. Their machine is used to moisten meal, not to dry or clean the seed for storage or shipping. It is doubtful whether the apparatus described in the complainant's patent could be used at all with moistened linseed meal. The experiment has not been tried, as no machine precisely like the patented apparatus was ever built or operated, and the testimony seems, practically, to be unanimous that the meal would clog in the space between the jacket and the coil, and soon cease to flow. The defendants have no conical steam-coil or central reservoir. There is no flowing down of the seed around a perforated steam reservoir while being sub-

jected to the action of the steam.    There are no adjustable stirrers, performing the functions of complainant's stirrers, and the flow is not regulated by their action.    Nor can it be said, remembering that an equivalent must perform the same function in substantially the same manner, that for these elements mechanical equivalents are used.

Take, for illustration, the lower part of the seed receptacle.    In the description the inventor states as follows:

"The lower part of the seed receptacle, (represented at O,) adapted for partially confining the seed and steam, when the softening and moistening process is required for pressing or other purposes, may be removed, and a perforated or screen-jacket substituted in lieu thereof.    By the employment of the latter the steam may be forced directly through the moving seed and screen-jacket, in such a manner as to cleanse it, and remove and carry away all impurities and excess of moisture previously contained therein."

It is said that for this the steam-jacket of the defendants (the sides of their tub or kettle are made double and filled with steam) is an equivalent; but the defendants' jacket does not perform the same functions as the jacket O.    Certainly it does not perform them in substantially the same way.    If a curb were placed around complainant's table the defendants' jacket would, perhaps, be an equivalent for such curb.

For these reasons it follows that the bill must be dismissed.