## PRATT v. THOMPSON & TAYLOR SPICE CO.

(Circuit Court, N. D. Illinois. November 8, 1897.)

PATENTS FOR INVENTIONS—PATENTABILITY—PROCESS INSTEAD OF MACHINE.

The Pratt patent, No. 407,684, for a process of cleaning, coloring, and polishing nuts, is void for want of patentability, since it consists of the application of old substances by a new machine, and no claim is made for invention of the machine.

This was an action at law by Adelaide F. Pratt against the Thompson & Taylor Spice Company for infringement of a patent. The case was heard on demurrer to the declaration.

Banning & Banning, for plaintiff.

Mr. Linthicum, for defendant.

GROSSCUP, District Judge. The action is at law, to recover damages for the infringement of letters patent No. 407,684, issued July 23, 1889. The present hearing is upon a demurrer to the declaration. It raises the question whether the patent under consideration discloses on its face a patentable invention. The purpose of the patentee is to disclose such a process of treating nuts as would clean the surface of their shells, and polish and color them to an appearance rendering them more marketable. The mechanism employed is described in the letters patent as follows:

"A denotes a housing adapted to be closed on all sides, and which should be provided with doors to permit access, when desired, to its interior, containing the tumbling barrel, B, supported in horizontal position on journals, r, at its opposite ends in the sides of the housing, one journal projecting beyond the housing, and being provided with a belt wheel, q, at which the power is applied to rotate the tumbling barrel. The housing communicates from its upper side with a suitable suction fan, C. The form of the tumbling barrel is preferably octagonal, and it is provided at intervals with inserted longitudinal screens, p, which are left uncovered while the tumbling operation is being performed, to clean the nuts by removing foreign matter (dirt) from their surfaces, but should be closed by sliding bars or boards, o, into grooves along their upper and lower edges while the coloring or coloring and polishing is taking place, as hereinafter described. To prepare the nuts to receive the coloring matter, they should be cleaned; and, to cleanse them, they are introduced through the doors, n, into the tumbling barrel, when the doors, n, and the housing, A, are closed. The tumbling barrel is then rotated, and the fan set in motion, whereby the dirt on the nuts is removed and drawn off by the action of the fan from the interior of the housing, into which it enters through the screens, p. After the cleaning has been thoroughly performed, the barrel is brought to a standstill, and the screens are covered by sliding the bars or boards, o, into place over them. Dry, pulverized coloring matter, such as Italian sienna of desired shade, or a mixture thereof of different shades of color, and, if desired, other suitable earthy coloring material or materials mixed with the sienna,—the mixture and ingredients depending upon the color to be produced,—is introduced in suitable quantity into the tumbling barrel, which is then again rotated. The result, which is obtained ordinarily in from twenty minutes to half an hour, when the motion of the barrel is stopped, is that the nuts are provided with a dull surface coloring. It is desirable that the nuts should then be polished, which I accomplish by introducing powdered soapstone upon them in the barrel, and again tumbling them therein for about fifteen minutes, when the nuts are removed and packed, and ready for the market. If preferred, the soapstone may be mixed and introduced with the pulverized coloring matter, whereby the coloring and polishing operations are performed simultaneously, and time saved. The color most desirable for pecan nuts ranges from light

mahogany or cherry to a dark mahogany, and may be attained by using a desired shade of pulverized Italian sienna, or mixing it with other dry, pulverized coloring matter, such as the substance known as 'curcuma,' or a chrome color. Other substances than those mentioned can be used for the coloring, depending upon the shade or color desired to be imparted to the nuts. Those stated, however, sufficiently explain the process, and will readily suggest others for use in producing shades that may be desired.

"The claims are as follows: (1) The process of treating nuts, which consists in tumbling them with dry, pulverized coloring material, substantially as described. (2) The process of treating nuts, which consists in tumbling them to cleanse them on their surfaces, and then coloring them by tumbling them with dry, pulverized coloring matter, substantially as described. (3) The process of treating nuts, which consists in tumbling them with dry, pulverized coloring material, substantially as described. (4) The process of treating nuts, which consists in tumbling them with dry, powdered Italian sienna, thereby imparting color to them, and with powdered soapstone, thereby polishing them, substantially as described."

In Corning v. Burden, 15 How. 252, referred to in Locomotive Works v. Medart, 158 U. S. 68, 15 Sup. Ct. 745, the court said:

"A process, eo nomine, is not made the subject of a patent in our act of congress. It is included under the general term 'useful art.' An art may require one or more processes or machines in order to produce a certain result or manufacture. The term 'machine' includes every mechanical device or combination of mechanical powers and devices to perform some function and produce a certain effect or result. But where the result is produced by some chemical action, by the operation or application of some element or power of nature, or of one substance to another, such modes, methods, or operations are called 'processes.' A new process is usually the result of discovery; a machine, of invention. The arts of tanning, dyeing, making waterproof cloth, vulcanizing India rubber, smelting ores, and numerous others, are usually carried on by processes, as distinguished from machines. One may discover a new and useful improvement in the process of tanning, dyeing, etc., irrespective of any particular form of machinery or mechanical device. And another may invent a labor-saving machine by which this operation or process may be performed, and each may be entitled to his patent. * * * It is when the term 'process' is used to represent the means or method of producing a result that it is patentable, and it will include all methods or means which are not affected by the mechanism of mechanical combinations. But the term 'process' is often used in a more vague sense, in which it cannot be the subject of a patent. Thus, we say that a board is undergoing the process of being planed; grain, of being ground; iron, of being hammered or rolled. Here the term is used subjectively or passively, as applied to the material operated upon, and not to the method or mode producing that operation, which is by mechanical means, and the use of a machine, as distinguished from a process. In this use of the term, it represents the function of a machine, or the effect produced by it on the material subjected to the action of the machine. But it is well settled that a man cannot have a patent for the function or abstract effect of a machine, but only for the machine which produces it."

The patent under consideration makes no pretension to the discovery that dry, pulverized coloring material, such as Italian sienna, or the like, will, if applied to clean and polished nuts, color them, or that powdered soapstone applied frictionally will polish them. The invention, if any is disclosed, resides in the mechanism whereby the soapstone and the pulverized coloring material are applied to the surface of the nut. The nut, in being painted or polished, undergoes no change or process, except passively or subjectively. The nuts thus powdered and colored may be a new commercial product, but their novelty in that respect is traceable solely to the application upon them, by a new machine, of old substances. The invention is prob-

ably highly meritorious, but should have been protected by a patent upon the machine, and not by a claim of a new art. For these reasons the demurrer must be sustained.