## GOSS PRINTING PRESS CO. v. SCOTT.

(Circuit Court, D. New Jersey. February 4, 1905.)

1. PATENTS—ASSIGNMENT OF INTEREST—INFRINGEMENT—SUIT FOR DAMAGES—PARTIES—VIOLATION OF INJUNCTION.

Where in a suit for infringement of letters patent an interlocutory decree was made for an injunction and an account, and thereafter the complainant assigned to third persons its entire right, title and interest in and to the letters patent, and took from them a mere license, non-exclusive, and non-assignable except to the successors or assigns of the business then carried on by the complainant, *held,* (a) that the complainant could not, in the suit as it then stood with respect to parties, recover profits or damages on account of infringement occurring after the execution of the assignment, or proceed against the defendant for a violation of the injunction by reason of such infringement; (b) that to secure an account, in equity, of profits or damages for such infringement it would be necessary to resort to an original bill or a bill of a supplemental nature brought by the licensee and assignees as co-complainants; (c) that in order that proceedings might properly be had for violation of the injunction, by reason of such infringement while the complainant remained a mere licensee, recourse should be had to a bill of the latter character.

[Ed. Note.—Accounting by infringer of patent for profits, see note to Brickill v. City of New York, 50 C. C. A. 8.]

2. SAME—VIOLATION OF INJUNCTION—CONTEMPT.

Where alleged infringing machines were made and sold by the defendant under letters patent granted to him after the issue of the patent in suit, and before constructing them he consulted counsel and an expert and was advised by them, and believed, that such machines

would not embody or contain the subject-matter of the patent in suit, he should not, in view of his innocence of intention, although an infringer in fact, be punished in contempt proceedings, where they are in no sense remedial, but solely of a punitive character.

(Syllabus by the Court.)

In Equity.,

M. B. Phillip and C. E. Pickard, for the motion.

Benjamin F. Lee, James G. K. Lee, and Wm. H. L. Lee, opposed.

BRADFORD, District Judge. The bill in this case was brought by the Goss Printing Press Company against Walter Scott and charged infringement by him of certain letters patent of the United States held and owned by the complainant, relating to multi-roll printing presses; among them being patent No. 415,321, dated November 19. 1889, granted to Joseph L. Firm for an "Improvement in Rotary Printing-Machines." An interlocutory decree was made July 12, 1901, sustaining the seventh claim of that patent, finding its infringement, directing an account of profits and damages, and awarding an injunction. Subsequently the defendant made and sold four printing presses respectively to the Halifax Press in Halifax, England, the Wichita Eagle in Wichita, Kansas, the Drovers' Telegram in Kansas City, Missouri, and the Dallas News in Dallas, Texas. These machines embraced two types of presses. Those sold to the Wichita Eagle and the Drovers' Telegram belonged to one type, and those sold to the Halifax Press and the Dallas News to the other. It is contended by the complainant that each of the four presses embodied the subject-matter of the seventh claim of patent No. 415,321 and was made and sold in violation of the injunction. During the taking of the testimony in the course of the accounting before the Master the defendant, by the advice of his counsel, declined to answer certain questions asked him relating to the amount received by him for those presses. The complainant has made application that the defendant be adjudged guilty of and punished for contempt in violating the injunction; that he be directed to answer the questions above referred to; that the four presses in question be included in the order of reference; and that the injunction be so extended as specifically to cover presses similar to them. The defendant, on the other hand, has made application that the accounting before the Master be limited to November 2, 1901, and that the injunction be "vacated as of said date." The applications on both sides are so related to each other that all of them conveniently may be considered in one opinion. It appears that the complainant executed November 2, 1901, an instrument in writing, bearing date on that day, in and by which it assigned to Robert Hoe and Charles W. Carpenter the "entire right, title and interest" in and to the letters patent therein mentioned, including among others patent No. 415,321, and "any and all reissues and extensions of the same throughout the United States and the Territories thereof, and the entire right, title and interest in and to the inventions contained in each of said letters patent; the same to be held and enjoyed by the said Robert Hoe and Charles W. Carpenter, for their own use and behoof and for the use and behoof of their heirs, executors, administrators and assigns, to the full end of the terms for

which said letters patent or any other letters patent for said inventions are or may be granted." The complainant thereby also assigned to Hoe and Carpenter all claims and demands, both at law and in equity, that it "has or may have for damages and profits on account of any infringement of the before mentioned letters patent, against any person, firm or corporation, except claims and demands against the aforesaid Walter Scott and the aforesaid Seymour-Brewer Printing Press Company, on account of the infringement of letters patent Nos. 399,659; 410,271; 415,321; 529,680 and 566,409," and authorized and empowered "the said Robert Hoe and Charles W. Carpenter to sue for in their own names and collect to their own use all such claims and demands." The presses for the Wichita Eagle, the Drovers' Telegram and the Dallas News were not, nor were or was any of them, ordered or negotiated for until after the execution of the above assignment. The press for the Halifax Press was ordered September 10, 1901, but its parts were not made and assembled until December, 1901, and the finished machine was not shipped until February 11, 1902. It is urged by the complainant that the assignment specifically reserved to it a right to damages and profits on account of all infringing machines that should be made by the defendant after its date. Stress is laid upon the words "has or may have" as indicating that the reservation or exception of claims and demands against the defendant for damages and profits were intended to extend, not only to claims for damages and profits existing at the date of the assignment, but to claims for damages and profits not arising until thereafter. This contention is inadmissible. It is more reasonable to attribute to the complainant redundancy of expression in the use of the words "has or may have" than to adopt a construction which would render the exception repugnant to the assignment. An intention that Hoe and Carpenter should have and enjoy the entire right, title and interest in and to patent No. 415,321, and the invention embodied in it, to the end of the term for which that patent was granted, is irreconcilable with an intention on the part of the complainant that it, to the exclusion of Hoe and Carpenter, should have the sole right to all future damages and profits arising at any and all times after the execution of the assignment and until the expiration of the term of the patent. The exception of claims for damages and profits on account of any infringement of patent No. 415,321 clearly has reference only to claims existing at the time of the execution of the assignment. By virtue of that instrument Hoe and Carpenter became the legal and equitable owners of the monopoly and invention of that patent. Hoe and Carpenter, November 2, 1901, and immediately upon the execution of the assignment to them, gave a license in writing under seal to the complainant to make, use and sell certain patented inventions including the press of patent No. 415,321. The portion of the assignment material in this connection is as follows:

"The said Robert Hoe and Charles W. Carpenter have granted, and do hereby grant, to the said The Goss Printing Press Company and the successors or assigns of the business now carried on by the said The Goss Printing Press Company, a license to make, use and sell the inventions of Joseph L. Firm assigned to the said Robert Hoe and Charles W. Carpenter by an assignment executed of even date herewith by the said The Goss Printing Press Company and by an assignment executed of even date herewith by the said The Goss

Printing Press Company and said Joseph L. Firm, copies of which assignments are annexed hereto, during the term of any letters patent that have been or may be granted for the aforesaid inventions in the United States, such license to be non-assignable to any person, firm or corporation, in whole or in part, except to the successors or assigns of the business now carried on by the said The Goss Printing Press Company, and provided that no right or privilege is granted in and by said license to the said The Goss Printing Press Company to make, use or sell any invention or inventions described and claimed in any letters patent owned or controlled by the said Robert Hoe and Charles W. Carpenter, or either of them, at the date hereof, or that may hereafter be owned or controlled by the said Robert Hoe and Charles W. Carpenter, or either of them, other than such letters patent as may be granted upon the applications of the said Joseph L. Firm."

This license is non-exclusive, and non-assignable, except to "the successors or assigns of the business now carried on by the said The Goss Printing Press Company." Under the settled law of procedure the complainant as such licensee cannot maintain in its name an action at law or, without the joinder with it of Hoe and Carpenter as parties complainant, a suit in equity for infringement by the defendant. Samuel G. Goss in his affidavit makes the following statement:

"Affiant further states that the said Robert Hoe and Charles W. Carpenter have further expressly agreed that they shall not and will not grant any license, shop-right or privilege to make, use or sell any of the inventions covered by the letters patent in the above named, assignment conveyed, including letters patent to Joseph L. Firm, No. 415,321, during the terms for which any of said letters patent have been granted, except the license to this complainant, The Goss Printing Press Company, or the successors and assigns of the business now carried on by the said Goss Printing Press Company."

This statement is indefinite, immaterial and inadmissible. It does not appear when or with whom such agreement was had. It may not have been made until after the sale and delivery of the four printing presses and immediately before the hearing. But, if it be assumed that such agreement was had with the complainant at or shortly after the time of the execution of the license, the aspect of the case would not be changed. There is nothing in the alleged agreement which could in any manner confer upon the complainant as against the defendant a right of action or suit not existing under the license. Further, it does not appear whether the alleged agreement was oral or in writing. In the absence of an averment to the contrary, it fairly may be assumed to have been merely oral. Clearly such agreement is not relied on by the complainant as a substitution for the license; and it is incompetent for the purpose of varying or explaining its scope or terms. The complainant, having conveyed the title, legal and equitable, to patent No. 415,321 to Hoe and Carpenter by the assignment of November 2, 1901, and none of the four printing presses above mentioned having been made, sold or delivered until after its execution, could not maintain a bill as sole complainant for infringement by reason of the making and selling of those presses. Its interest as licensee under Hoe and Carpenter would be insufficient to support such a bill. Nor is the complainant, as such mere licensee, entitled in this suit, as it now stands, to an account of profits or damages with respect to those presses, nor to proceed against the defendant for a violation of the injunction after the execution of the assignment. It is true that the assignment did not either terminate the suit or vacate the injunction. Notwithstanding

the assignment the complainant is entitled to an account for profits and damages until its execution; and should the complainant regain ownership of the patent before the expiration of its term, it may well be that it would be entitled to the full benefit of the injunction. But the interlocutory decree for an injunction and an account, while establishing the then ownership of the patent and its infringement and the rights of the complainant predicated upon such ownership, did not in any manner merge the patent or destroy or restrict its assignability. When that ownership ceased the complainant became a mere licensee, and under the decree possessed no right to proceed against the defendant for any violation of the injunction after the termination of such ownership, or to an account of profits or damages for any infringement occurring thereafter. To secure an account in equity of profits or damages for infringement so occurring it would be necessary to resort to an original bill, or a bill of a supplemental nature, brought by the Goss Printing Press Company and Hoe and Carpenter as co-complainants. And in order that proceedings may properly be had for violation of the injunction while the complainant continued a mere licensee recourse should be had to a bill of the latter character.

The writ of injunction served upon the defendant is directed against "directly or indirectly making, using, furnishing to others for use, or selling in any manner." None of the four presses complained of was made, used, furnished to others for use, or sold, prior to the execution of the assignment. The interlocutory decree, however, is broader in its prohibitive terms than the writ of injunction. It provides for an injunction against "directly or indirectly making or causing to be made, using or causing to be used, selling or causing to be sold to others for use, and from offering to make and sell in any manner." It is claimed that the writ of injunction possessed the same force and effect as it would have had if the above language were embodied in it, and that the defendant prior to the execution of the assignment offered to make and sell one of the four presses, in that the order for the press subsequently sent to Halifax was received and accepted September 10, 1901. On the assumption that the writ of injunction is so to be interpreted, and, further, that the complainant as a mere licensee is authorized, in this suit as it now stands, to proceed for a violation of the injunction prior to the execution of the assignment,—a point by no means clear,—the question remains whether the circumstances of the case as disclosed in the affidavits and exhibits would justify the court in adjudging the defendant guilty of contempt and inflicting punishment therefor. The printing presses for the Wichita Eagle and Drovers' Telegram embodied the subject-matter of patent No. 753,169, dated February 23, 1904, granted to the defendant, and those for the Halifax Press and Dallas News the subject-matter of patent No. 753,640, dated March 1, 1904, also granted to the defendant. Both patents were applied for in May, 1901. Their issue was attended with the usual prima facie presumption of patentable novelty involving patentable difference between the mechanism described and claimed in them and that of patent No. 415,321. Ransome v. Hyatt, 69 Fed. 148, 16 C. C. A. 185; Miller v. Eagle Manufacturing Co., 151 U. S. 186, 208, 14 Sup. Ct. 310, 38 L. Ed. 121; Corning v. Burden, 15 How. 252, 271, 14 L. Ed.

683. It appears that the defendant before constructing any of the four presses consulted with his counsel and a patent expert and was advised by them that such printing machines would not embody or contain the subject-matter of the seventh claim of the last mentioned patent. He states positively under oath that he then believed and still believes that such advice was correct. There is nothing in the evidence to warrant a conclusion that the defendant is not sincere in his statement. It may be that he has entertained a mistaken belief and is an infringer. Honest belief and advice of counsel will not of themselves in all cases relieve an infringer from responsibility for his violation of an injunction. Where the contempt proceedings are of a remedial rather than punitive nature, innocence of intention, while serving to mitigate the consequences of a breach of injunction, will not constitute a defense; but where the proceedings in contempt are solely punitive it is otherwise. Here the proceedings are not remedial in any proper sense. They can be of no direct benefit to the complainant. Under them the defendant cannot be compelled to account to him for profits and damages by reason of the mere offer to make and sell in violation of the injunction. The sale not having occurred until after the execution of the assignment to Hoe and Carpenter, profits and damages on account of that sale cannot, as before stated, be recovered in this suit as it now stands. Nor can a fine be imposed as an indemnity to the complainant; for no pecuniary damage has resulted to the complainant from the mere offer to make and sell. It may be questionable, under the circumstances of this case, whether it would be proper, in the absence of pleadings and plenary proofs, and on a mere rule to show cause, summarily to determine the validity or invalidity of patents subsequent to that in suit and ascertain whether the defendant acting under such subsequent patents has infringed that in suit. Certainly such a course would not be justified unless the evidence of infringement were clear and convincing. But the crucial question here is not whether the defendant prior to the execution of the assignment may have infringed through his acceptance of the order for the press sent to Halifax, but whether, on the assumption that such infringement occurred, he should, notwithstanding his belief and innocence of intention, be punished. I am satisfied that such punishment is not required or warranted either by the authorities or by reason. It results from the foregoing considerations that the rule to show cause why the defendant should not be punished for contempt, and why he should not answer certain interrogatories therein referred to, and why certain printing presses therein referred to should not be included in the order of reference in this case, and why the defendant should not account for the same, must be discharged; that the motion that the injunction be so extended as specifically to cover certain printing presses be denied; and that the accounting before the master be limited to November 2, 1901, the date of the assignment. The application for the "vacation" of the injunction as of that date is unnecessary and improper, and must be denied.