Mr. Justice Robb
delivered the opinion of the Court:
This is an appeal from a decision of the Commissioner of Patents refusing the appellant, Charles Tallmadge, a patent on *591 Ms alleged invention relating, as he says in his application, to “automatic accounting systems.”
“The purpose of the applicant,” says the Commissioner, “is-to avoid the possibility of errors in the keeping of double entry accounts. He points out that in transferring entries from the journal to the ledger in which such accounts are commonly kept, it frequently happens that the debit entry under one account will not be duplicated in .the credit entry under the corresponding account, or that one of the double entries will, through inadvertence, be entirely omitted. To overcome this difficulty, he has devised a machine to mechanically register the-entries, so constructed that a credit in one account necessarily results in a debit entry of the same amount in some other account. Thus, the only volitional acts required of the operator-are the indication of the proper accounts for such entries, and! the fixing of the amount, on the keyboard of the machine.”
The issue is stated in twenty-two claims, of which the following are representative:
“1. The method of accounting which consists in freely selecting any two out of three or more entry-receiving devices, establishing reversed relations between a common actuating means and the respective entry-receiving devices of the selected pair, adjusting the actuating means to determine the magnitude of its actuation, and actuating the entry-receiving devices while automatically maintaining said adjustment and said reversed relations.”
“10. The method of transmitting entries telegraphically as herein described, by causing actuation of distant entry-receiving mechanisms corresponding to manual set-ups on a set of operating keyboards, substantially as set forth.”
“13. The method of accounting which consists in effecting-automatically counter-balanced entries in any two out of three- or more entry-receiving devices.”
“19. The method which consists in automatically maintaining a condition of equilibrium in three or more entry-receiving, devices, wMle indefinitely repeating the following series of operations; freely selecting any two of the entry-receiving devices, *592 ■establishing operative relations with respect to the selected entry-receiving devices, operating the selected entry-receiving devices from a common volitionally controlled source, and simultaneously controlling the operation- of automatic mechanism for making a record of the operations of the three or more entry-receiving devices.”
The Primary Examiner rejected all the claims upon the ground that they involved “nothing more than the function of the machine,” claims for which were then pending. Thereupon, reconsideration of the decision was sought and obtained, appellant filing a comprehensive brief in support of his contentions. Upon reconsideration, the Examiner adhered to his prior decision. The Examiners in Chief, who then passed upon the case, after full consideration, sustained the Examiner, closing their opinion as follows: “The Examiner has rejected the •claims as covering nothing more than the functions of a machine. It may be that in form they do not cover precisely the function of the machine, but they seem to cover any and all ways of producing the result at which applicant aims, and his method is nothing more than selecting and operating the proper parts of a machine to carry out the functions for which the machine is designed. The Examiner states that there seems to be no patentable method set forth in claim 1, which is the claim specifically discussed by him, and, more specifically, no method that can be separated from the particular machine, or, of course, broadly speaking, its equivalent, and the ground of rejection seems to correspond closely with the facts. As this ground of rejection seems to apply equally well to all of the claims, the action of _ the Examiner is affirmed.”
The case then received further consideration by the Commissioner, who reached the same conclusion, saying: “I am of the opinion that the claims were properly rejected, since they distinguish from what is old only in setting forth the function or operation of the applicant’s machine.”
We have given this case very careful consideration, but we are nevertheless constrained to sustain the views of the Patent Office tribunals. Before proceeding to a very brief recital of *593 our reasons, we deem it necessary to direct attention to the unwarranted criticism of the Patent Office found in appellant’s supplemental brief. Appellant sought and obtained permission to file this brief for the declared purpose of further elucidating the one question involved in the appeal. Instead of adhering to that purpose, he has devoted a considerable portion of the thirty-one pages of his supplemental brief to criticism of the Patent Office tribunals. It is needless to say that we regard such criticism as an abuse of the privilege accorded, and utterly without bearing upon the question before us.
The patent law authorizes the issuance of a patent to any person who has invented or discovered any new and useful art, and a process may constitute such an art. To constitute such an art, however, it must be capable of producing a beneficial result without the aid of any particular mechanism, for where the process is simply the function or operative effect of a machine, it is not an invention, but at most the result of one. Corning v. Burden, 15 How. 252, 14 L. ed. 683 ; Westinghouse v. Boyden Power Brake Co. 170 U. S. 537-555, 42 L. ed. 1136-1143, 18 Sup. Ct. Rep. 707; Re White, 31 App. D. C. 607.
In his application appellant states: “The invention here presented substitutes the automatic for the human element in all operations subsequent to the initial act of entry, and to that extent eliminates the liability to error, the labor and the delay inherent in the methods now practised.” The only element of novelty which appellant is able to point out in these claims is that of “establishing reversed relations between a common actuating means and the respective entry-receiving devices of the selected pair.” A debit and credit sheet having been selected, it is contended that the placing of them in such a position that a debit and credit entry may be made at the same time by a single operating device constitutes an inventive idea. Debit and credit pages were, of course, old, and many forms of duplicating devices were known. Surely the idea of placing a piece of carbon paper between debit and credit pages, so that a rubber stamp would make an impression upon each at the same *594 time, constitutes no invention; and yet this is the only novel feature of appellant’s claims. As is well said by the Examiners in Chief: “It will thus be seen that unless the claim be construed to cover some more definite form of entry-receiving device and a common actuating means, such, for instance, as-two mechanical registers operated by a common operating bar, the claim would have nothing patentable in it, and if so construed, the claim would not cover a proper method, as it would clearly be limited to a specific mechanical device such as would be found in applicant’s other machine application, where it can be properly claimed.”
What is the result achieved by appellant’s alleged process? It is nothing more than the making of a simultaneous debit and credit entry. This result, as we have seen, is not patentable. It may well be that the manner in which appellant achieves this result through the operation of his machine is new; in other words, his machine may be patentable, but his present claims are not. His machine patent would not, of course, prevent others from reaching the same result in an entirely different way, but the granting of his present application would. Had he really invented a method of simultaneous double entry bookkeeping, he would be entitled to the protection of that invention, but having merely invented a machine by which such a result, is attained, he is not entitled to a monopoly of more than the machine. A method patent was sustained for a process of making paper bags, but, as pointed out by Mr. Justice Brown in the Westinghouse Case, 170 U. S. 557, 42 L. ed. 1144, 18 Sup. Ct. Rep. 707, the process might be performed manually by “the folding of paper in a peculiar way;” in other words, the discovery of a peculiar, novel, and useful way of folding constituted the invention.
Without further elaboration, we sustain the decision of the Commissioner. Affirmed.