EXPANDED METAL CO. et al. v. BRADFORD et al.

(Circuit Court, E. D. Pennsylvania. March 30, 1905.)

No. 14.

1. PATENTS—INFRINGEMENT—PROCESS.
    While there may be a patent for a machine to perform a process patented by another, its use in the practice of such process constitutes an infringement of the process patent.

2. SAME—PROCESS OF EXPANDING METAL.
    The Golding patent, No. 527,242, for a process of making open or reticulated metal work by slitting and expanding sheet metal, covers a novel and useful process, and discloses invention. Also *held* infringed.

In Equity. On final hearing.

Ernest Howard Hunter, for complainants.

E. Hayward Fairbanks, for respondents.

HOLLAND, District Judge. This bill was filed April 30, 1903, alleging that the defendants infringed letters patent No. 527,242, for a new and useful improvement in the art of expanding sheet metal, issued to John F. Golding October 9, 1894, subsequently assigned to the Expanded Metal Company, and Chess Bros. under it became exclusive licensees of this patent in Pennsylvania and a number of other states. The defendants, in their answer, deny infringement, and allege invalidity of the patent, for want of utility, lack of patentable subject-matter as a method or process, and anticipation and lack of invention, in view of the prior art.

The method of making the old and well-known metallic screening in use for a great number of years was described in the Long patent issued in England in 1862, and the Golding patent issued in this country in 1884, and was as follows:

"In the manufacture of slashed metallic screening, a blank piece of sheet metal is taken, of the required size and thickness, and at intervals it is slashed or cut; the slashes or cuts in each line of the cuts being opposite to the spaces between the slashes or cuts of the adjoining line or lines. These slashes or cuts are made of the required length to form the proper sized meshes. After the metallic sheet is cut or slashed as above described, it is stretched in line transversely to the length of the slashes or cuts, thus forming meshes. The act of stretching causes the metal forming the boundaries of each mesh to take an oblique position, amounting nearly to a perpendicular line, thus presenting the cut edges of the metal to the surface of the screening. Between the ends of the slashes or cuts are spaces of metal uncut which hold the strands or meshes together."

The Golding patent issued in 1884 for this process of manufacturing metallic screening was passed upon by the Circuit Court of Missouri in 1900, and held to be anticipated by the Long patent issued in England in 1862. Expanded Metal Company et al. v. Board of Education et al. (C. C.) 103 Fed. 287. This finding was sustained by the Circuit Court of Appeals of the Eighth Circuit in 1901, but the patentability of the process was not questioned. 111 Fed. 395, 49 C. C. A. 406.

By this process of manufacturing expanded metal, the stretching was frequently irregular, and the slashed sheet, while enlarged or

expanded in width, was very materially shortened in length, and the product was not a success commercially.

Golding subsequently applied for a patent for a new and useful process for manufacturing slashed metallic screening, and letters patent were issued to him in 1885 for this process, which consisted in cutting successive slashes or incisions in the sheet, beginning at one side and near the corner thereof, and pressing the strips thus partially disconnected from the sheet successively away from the sheet in a direction oblique thereto, but otherwise in a plane perpendicular to said sheet, or substantially so; the two operations, as well as the further operation of bending the connected material and giving form and set to the meshes, being effected by the simultaneous operations of slashing and pressing. By this method, however, the expanded product is shortened in length to the extent of 15 or 20 per cent. The meshes are not at right angles to each other, and the sheet, when expanded, is of an irregular form, and could not be economically and conveniently used in square iron frames without a waste of material and cutting through the meshes in fitting it to such a shaped frame. Commercially this product was a little more successful than its predecessor.

In 1894 Golding applied for a patent for a new and useful improvement in the art of expanding sheet metal, and the patent in suit was issued to him, wherein he described the process as follows:

"In the manufacture of what is now generally known as expanded sheet metal, it has been customary to first cut the slits in the sheet metal at short distances apart, and to open the metal at the cuts thus formed by bending the severed portions or strands in a direction at right angles, substantially, to the plane of the sheet. It has also been made by simultaneously cutting and opening the metal by means of cutters set off or stepped relatively so as to make the slashes or cuts in different lines, in the manner set forth in patent No. 381,230 or No. 381,231, of April 17, 1888. In both of these methods the product is somewhat shorter and materially wider than the original sheet, but practically no stretching or elongation of the metal forming the strands is caused. In my present invention I seek to avail myself of the ability of the metal to stretch or distend, as well as of its ability to bend under strain or pressure, and the invention consists in the improved method of making expanded metal, viz., by simultaneously cutting and opening or expanding the metal at the cuts by stretching the severed portions. In the practice of the invention, I prefer to make a series of slits in a straight line across the edge of the sheet, and at the time of cutting the slits, and as a continuation of that operation, to depress or stretch the severed metal (i. e., those portions of the sheet lying outside of the cuts) in a direction at right angles to the sheet, without any contraction from the length of the original sheet. This operation is then repeated after the sheet has been fed forward, the slits being made opposite the portions unsevered at the previous operation, and so on until the entire sheet is expanded. My invention allows the use of a single, straight underknife, which, of course, does not need to be shifted in changing the location of the cuts; and the upper cutters are also arranged in a straight line, but their acting edges represent a corrugated form of alternate transverse projections and recesses, adapted to coact with the underknife in cutting the slits at the proper intervals and to stretch the severed strands, and either the upper cutter or the sheet is shifted back and forth between the operations, as will be understood.

"In the accompanying drawings, Fig. 1 is a perspective of a sheet, a part of which has been expanded by my invention. Fig. 2 is an elevation of the preferred form of cutters used in manufacturing it. Fig. 3 is a section on line 3–3 of Fig. 2. Fig. 4 is a plan of the sheet, showing the first line of

slits in dotted lines. In the drawings, A represents the sheet from which the expanded metal is formed, B represents the series of upper or moving cutters, and C is the lower knife, which may be, and preferably is, stationary. The lower edges of the cutters, B, are so shaped as to form alternate transverse projections, b, and recesses or intervening openings, c; the projecting portions being adapted to coact with the lower knife in forming the slits. They are also adapted to force or carry downward the severed portions of the metal, at the same operation, to the position indicated by the broken lines, m, at Fig. 2. It will be noticed that at the time the bend is imparted to the severed portion there can be no contraction in the product from the length of the sheet, A, because the ends of the severed portion or strand are still integral with the sheet, and will not permit it. The sheet is then fed forward, and the slitting and stretching operation is repeated. One line of slits across the sheet is formed at each operation, and the upper cutters or the sheet may be shifted, and the sheet be fed forward between the operations, so that the slits are in every case made back of the portions left unsevered at the preceding operation, or, in other words, the slits and unsevered portions alternate in position at successive operations. The bend given to the severed portion, or strands, as they are usually called, is in a direction at right angles to the plane of the sheet; and, as there is no contraction in the length of the metal, it necessarily follows that the expansion is obtained from the stretch, distension, or elongation of the severed strands.

"I claim the herein-described method of making open or reticulated metal work, which consists in simultaneously slitting and bending portions of a plate or sheet of metal in such manner as to stretch or elongate the bars connecting the slit portions and body of the sheet or plate, and then similarly slitting and bending in places alternate to the first-mentioned portions, thus producing the finished expanded sheet metal of the same length as that of the original sheet or plate, substantially as described."

The open or reticulated metal work made by this process accomplishes something entirely new. By this novel process Golding was able to expand his metal into a reticulated metal work, and produce an expanded sheet of the same length as the ordinary blank metal plate. It was stronger, and the meshes regular in form and appearance, and exactly at right angles with each other. A line through the intersection of the meshes in one direction is exactly at right angles with a line drawn through the intersection in the other direction. From this it results that the expanded sheet is not only regular in form and appearance, but has the maximum possible strength afforded by the thickness of the metal and size of the mesh, and, as a commercial product, it can be put to many additional uses than the slash metallic screening theretofore manufactured. This process is a new and useful method not theretofore known or used in the prior art. It is a mode or treatment of metal, as distinguished from the machinery or means by which the result is accomplished. In the language of the patent law, it is an art, and just as patentable as a piece of machinery. Cochrane v. Deener, 94 U. S. 780, 24 L. Ed. 139; Tilghman v. Proctor, 102 U. S. 707, 26 L. Ed. 279.

While I am of the opinion that the process is patentable, yet it does not follow that the making of a machine such as that invented by the defendants is an infringement of the plaintiffs' patent. One may discover a new and useful process by which metal may be expanded, irrespective of any particular form of machinery or mechanical device, and another may invent a labor-saving machine

by which this operation or process may be performed; and each may be entitled to his patent. Corning v. Burden, 56 U. S. 252, 14 L. Ed. 683. There is no claim in the plaintiffs' patent for any particular machine by which this process of expanding metal is accomplished, and we see no reason why the means of performing the process patented by the plaintiffs cannot be embodied in a machine and patented by the defendants. Cochrane v. Deener, supra. So that, in so far as the plaintiff's bill relies upon the mere creation of the machine by the defendants to perform the process which he has patented, as an infringement, it must fail, as the defendants would have a right to construct and patent such a machine. It is entirely separate and apart from the process which the machine is intended to accomplish. Robinson on Patents, §§ 904, 925. The evidence, however, is that the defendants infringed the plaintiff's patent in using its process, and expanded metal, to some extent, was produced by their machine by the same process covered by the plaintiff's patent, and without its permission. To that extent the rights of the plaintiffs in the patent in suit were infringed. The metal manufactured under the process of the plaintiffs' patent was produced here in Philadelphia prior to the bringing of this suit, and whether it was produced by a perfect machine, or not, can make no difference. The patented process was used, and the infringement complete.

The plaintiffs' bill is therefore sustained, and a perpetual injunction awarded.