## NATIONAL METAL MOLDING CO. v. FLEXIBLE CONDUIT CO.

### (District Court, W. D. New York. July 29, 1914.)

PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—MECHANISM AND PROCESS
FOR MAKING ARMORED CABLE.

The Gilson patents, No. 1,004,643, for a mechanism for making armored
cable, and No. 1,004,644, for a process for armoring cable, were not an-
ticipated, and are valid and entitled to a fair range of equivalents.
Claims 1 and 3 of the apparatus patent, and claim 10 of the method pat-
ent, also *held* infringed.

In Equity. Suit by the National Metal Molding Company against
the Flexible Conduit Company. On final hearing. Decree for com-
plainant.

Marshall A. Christy, of Pittsburgh, Pa. (J. William Ellis, of Buffalo,
N. Y., of counsel), for complainant.

Robert S. Allyn, of New York City, for defendant.

HAZEL, District Judge. This action is for infringement by the de-
fendant of two patents granted to Henry R. Gilson, October 3, 1911,
one for a mechanism for making armored cable and similar products,
and the other for a process for armoring cable, and numbered 1,004,-
643 and 1,004,644, respectively. The method patent has three claims,
which read as follows:

"1. The method of armoring cable, which consists in coiling about and con-
tinuously drawing down into binding engagement with the surface of the cable
a spirally wound metallic armor, and thereby feeding the coils and cable con-
tinuously forward.

"2. The method of armoring cable, which consists in coiling about and con-
tinuously drawing down into binding engagement with the surface of the
cable a spirally wound metallic armor, thereby feeding the coils and cable
continuously forward, and then compressing and further setting the coils.

"3. The method of armoring cable, which consists in coiling upon a cable a
spirally wound metallic armor, and then abruptly bending the armored cable
and causing portions of adjacent coils to momentarily bind against each other,
thereby neutralizing the torsional strain induced by the coiling."

The specification states that this process is also usable for making
metal tubing, but with that we are not here concerned, as the asserted
infringement is in the manufacture of flexible cable alone. There
is in the method patent no limitation to a particular mechanism, but
the apparatus described in patent No. 1,004,643 is therein referred
to as suitable for the purpose. According to the specifications, the
metallic strips of which the armor is made are substantially flat and
flanged at their edges at an angle somewhat less than a right angle,
and "one, two or any desired number" of strips may be used, depend-
ing upon the character of the armor to be produced. When, for ex-
ample, four-strip armor is to be produced two strips are formed side
by side with the flat portion against the cable, the flanges projecting
outwardly in such a way that each bears upon the other, and upon
these inner strips are applied two other strips with the flanges pro-
jecting inwardly, the outer strips forming bridges over the adjacent

inner flange thereby imparting flexibility to the coils. But when two strips (the commercially preferred number) are used the method of manufacture, according to the complainant's brief, is as follows:

"One strip is wound upon the cable with its concave face outward, and the other strip is wound upon the inner strip with its concave face turned inward and breaking joints with the successive convolutions of the inner strip, so that the inwardly turned edges of the outer strip bear upon the concave body portions of two adjacent coils of the inner strip. By this construction the inner and outer strips are held in proper relation one by the other, while at the same time, the coils will have a limited range of movement relatively to each other, and the armored cable as a whole is thus given the desired flexibility."

The strips are applied in the foregoing manner by the use of co-operating instrumentalities, consisting of a rotating coiling head with reels for separately carrying the outer and inner strips, and a hollow tapering mandrel through which runs the cable around which strips are wound. On the mandrel frame at the tip of the mandrel are placed opposite each other two guides which rotate with the mandrel directing the coiling of the strips and holding them in proper relation during the process of coiling and impart the desired flexibility to the coils. As the coiling proceeds, the coils travel towards the grooved stationary sizing rolls, which are adjacent to the tip of the mandrel, and by passing between them secure uniformity of diameter and stability.

The evidence shows that during the coiling operation there is a tension on the coils causing them to twist and kink, which tension is neutralized by the binding engagement specified in claims 1 and 2 of the process patent and claim 9 of the apparatus patent, and by the abrupt bend imparted to the cable by feeding it forward and downward to the compression rolls. In other words, as the cable in its rotation passes downward and partly around the grooving of the nearest sizing roll, a bending occurs, in consequence of which the cable is straightened out. To reduce the frictional resistance to the coiling, the patentee preferably rotated the mandrel in a direction opposite to the direction of the rotating head, and formed a groove on the mandrel to push the coils forward; but these features, included in the claims of the patent for apparatus, were not necessary to the manufacture of two-strip armor.

The steps of the process as specified in claim 1 consist of (1) coiling the strips about the cable, and (2) continuously drawing them down as they come in binding engagement with the cable traveling forward and away from the mandrel. Claim 2 includes an additional element, i. e., the compression of the coils by the adaptation of the sizing rolls; while claim 3 emphasizes the feature of abruptly bending the armored cable to neutralize the torsional strain. The defendant earnestly contends that the process patent is merely descriptive of the function of the machine, but I am not satisfied by the evidence that such is the fact.

Armored cable had never before been made by helically coiling metal strips and bringing them in binding engagement with the cable, although it was not a new product and had been produced in a variety of ways before the granting of the patents in litigation; but its pro-

duction was due to processes and mechanisms patentably different from those described in the Gilson patents in suit. In my opinion the claims in controversy are not merely descriptive of the use to which the machine may be put, but they set forth steps which are capable of accomplishing a new and useful result. Corning v. Burden, 15 How. 252, 14 L. Ed. 683; Cochrane v. Deener, 94 U. S. 780, 24 L. Ed. 139.

Claims 9, 10, and 11 of the apparatus patent, which are for a combination of elements by which armor is coiled and wound around cable and the whole then straightened out, are in issue; but it will suffice to set out claim 10:

"10. In a machine of the class described, the combination, with means for coiling upon a cable a spirally wound metallic armor, of means for abruptly bending the armored cable and causing portions of adjacent coils to momentarily bind against each other, and thereby to neutralize the torsional strain induced by the coiling."

This claim for a combination includes means for coiling the strip upon the cable and abruptly bending the armored cable to neutralize the torsional strain. In claims 9 and 11 are included sizing rolls— an element not thought contained in defendant's machine. It is no doubt true that the separate elements of the claims were old, yet these two elements had never before been combined in a machine for closely coiling metal strips around a cable to produce a flexible armor, and by their adaptation a new and useful result was attained.

In the Sperry patent, No. 47,343, is described a machine for covering wire with other wire; but the machine cannot be used for coiling and drawing down the covering wire as in complainant's machine. On the contrary, the wire in the Sperry patent is wound directly upon the surface of another portion of wire, and there is nothing shown therein to enable bringing the strips of metal down to overlap at their edges, or to enable feeding them continuously forward, or abruptly bending the adjacent coils to relieve the tension or strain.

The Greenfield patents, Nos. 630,502, 630,503, and 724,570, clearly show the limitations of the prior art in this field of usefulness at the date of the invention in suit. They relate to adaptations for insulating cables by winding armor thereon, and accomplish this by the use of a grooved die which has a spiral configuration on its inner side. In making the armor, the strips of metal are inserted in the die and passed through it, and thus molded and compressed to engage the cable. Such an operation is on an entirely different principle from that of the invention in suit.

In the Greenfield patent, No. 724,570, there are shown friction rollers; but these, I think, are incapable of performing the function of the compression or sizing rollers *35* of the Gilson patent. There is nothing in this Greenfield patent to anticipate complainant's patent, or to require such a limitation of the claims as will avoid infringement of claim 10 of the apparatus patent and claim 3 of the process patent.

There are also exhibits of patents for winding strips of metal helically on the surface of a mandrel to cover hose and for armoring

cable; but in none of them is found the combination of elements of claims 9, 10, and 11 of the Gilson apparatus patent, which contains mechanism for coiling the metal strips upon the cable in binding engagement, and for compressing it and bending it to neutralize torsional strains. It was quite important that the flanged metallic strips of the Gilson patents should be wound so that they would not incumber one another in their forward movement, but would travel along evenly and continuously as the edges of adjacent coils contacted with one another. How to achieve such a result was a problem which the prior art did not disclose or suggest, but which Gilson by the exercise of a fair degree of the inventive faculty solved. We must therefore accord to him a fair and reasonable construction of his claims, allowing a fair range of equivalents in passing upon the question of infringement.

Complainant's Exhibit No. 1, which concededly is descriptive of defendant's machine for armoring cable, shows the employment of a reel on the right of the machine bearing the cable to be armored, which is passed through a hollow shaft. The metal strips of which the armor is formed pass from reels down through guides to the mandrel, the inner strips being first wound around the mandrel. The coils are formed of a greater diameter than the cable and then drawn down to it. A shoulder $k$ on the rotating head guides the strips or coils as they travel forward along the surface of the mandrel. It makes no difference that the shoulder $k$ is somewhat different from the helical abutment of complainant's machine; it is enough that the coils are drawn down along the tapered mandrel to the end thereof, and that they then grip the cable. This result is achieved by the adaptation of the steps $d$ described in claims 1 and 3 of the method patent in controversy.

I am left in doubt by the evidence as to whether the sizing rolls of complainant's patent are embodied in the machine used by the defendant company. The proofs are that originally smoothing rolls were used experimentally, but that their use was afterwards in good faith abandoned, and has not since been threatened. Such use, in my judgment, does not constitute infringement of claims 9 and 11 of the apparatus patent, or of claim 2 of the process patent. Defendant is, however, shown to have an idle drum or sheave in connection with its machine, around which the armored cable turns, and the bend thus given the cable no doubt is sufficiently abrupt to take out the torsional strain imparted to the cable in the coiling operation, and therefore defendant is thought to have appropriated the substance of claim 3 of the method patent and claim 10 of the apparatus patent, achieving the same result as complainant.

It follows, therefore, that although the various claims in issue of both the method and apparatus patents are valid, only claims 1 and 3 of the former and claim 10 of the latter are infringed by the defendant company, and a decree, with costs, may be entered accordingly.